UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Vanessa Palestino,                                    File No. 26-cv-1911 (ECT/ECW)

      Plaintiff,

v.                                                    **OPINION AND ORDER**

Verifone, Inc.,

      Defendant.

Scott Moriarity, Moriarity Law Office PLC, Minneapolis, MN, for Plaintiff Vanessa Palestino.

Briana Al Taqatqa and Grace Jacobson, Dorsey & Whitney, Minneapolis, MN, for Defendant Verifone, Inc.

Plaintiff Vanessa Palestino worked for Defendant Verifone, Inc. While employed there, Ms. Palestino alleges, her former supervisor sexually harassed her, and Verifone fired her in retaliation for reporting the harassment. In this case, Ms. Palestino asserts sexual-harassment and reprisal claims under the Minnesota Human Rights Act. Verifone seeks judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The motion will be denied because the Complaint's allegations—which must be accepted as true at this stage—plausibly show each claim's essential elements.

I[1]

"Verifone hired Ms. Palestino as a senior sales executive in January 2025." Compl. [ECF No. 1-1] ¶ 13. A few months later, in June 2025, Verifone hired Dennis Mos as its senior director of sales. *Id.* ¶ 14. In this position, Mr. Mos was Ms. Palestino's direct supervisor. *Id.*

"Ms. Palestino met Mr. Mos in person for the first time at a one-on-one 'work dinner' at the Hotel Westin in Atlanta, Georgia on August 4, 2025." *Id.* ¶ 18. The dinner's stated purpose "was to prepare for meetings with a major Verifone business prospect the next day." *Id.* ¶ 18(a). "Mr. Mos drank heavily throughout the dinner, consistently redirecting the conversation to remarks about Ms. Palestino's physical appearance." *Id.* ¶ 18(b). He told Ms. Palestino she was successful only "because of her looks." *Id.* Mr. Mos also "asked about Ms. Palestino's tattoos," including whether she had "any tattoos I can't see?" *Id.* ¶ 18(c). "Ms. Palestino believed that Mr. Mos was asking about tattoos in more sexually intimate areas and was inappropriately pressing for details about sexual matters." *Id.*

The next day, "Verifone hosted an event for its major business prospect at an Atlanta Braves game." *Id.* ¶ 19. Mr. Mos and Ms. Palestino attended, along with several representatives of the business prospect. *Id.* "Mr. Mos drank heavily and was drunk

---

[1]    In accordance with the standards governing a Rule 12(c) motion, the facts are drawn entirely from Ms. Palestino's Complaint. *See Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Page citations are to pagination assigned by the court's CM/ECF system appearing in a document's upper right corner, not to a document's original pagination.

throughout the event." *Id.* ¶ 19(a). "During the event, Mr. Mos repeatedly insulted Ms. Palestino in front of the prospect's representatives." *Id.* ¶ 19(b). Mr. Mos "called Ms. Palestino 'useless.'" *Id.* He said "Verifone only hired her because she 'keeps good company.'" *Id.* "When Ms. Palestino returned from a bathroom break, Mr. Mos complained about her failure to bring him a drink, saying that she was 'not good for anything.'" *Id.* These and other statements implied "that Ms. Palestino was hired for her sexual attractiveness instead of her job skills." *Id.* "At the end of the event, Mr. Mos pulled Ms. Palestino close and kissed her cheek." *Id.* ¶ 19(d). "Ms. Palestino did not invite or welcome this conduct in any way." *Id.*

After these events, "Mr. Mos continued making unprofessional comments about Ms. Palestino." *Id.* ¶ 20. He "regularly commented about Ms. Palestino's physical appearance." *Id.* ¶ 27. "He told Ms. Palestino that she was only successful at her job because of her looks and that her future success depended on her sexual attractiveness." *Id.* "He regularly suggested Ms. Palestino should leverage her sexual attractiveness in order to help increase Verifone sales." *Id.* ¶ 20. "Through repeated remarks about her sexual attractiveness and the use of sexual attractiveness to leverage sales, Mr. Mos expressed further sexual interest [in Ms. Palestino] and signaled that sexual favors or compliance were being used as factors in decisions affecting Ms. Palestino's employment." *Id.* ¶ 34(b).

"In an email to Verifone human resources on September 18, 2025, Ms. Palestino reported Mr. Mos'[s] unwelcome and inappropriate conduct, explaining that it 'deeply impacted' her well-being and work performance." *Id.* ¶ 21. The next day, September 19,

3

a Verifone human resources representative interviewed Ms. Palestino by telephone regarding Mr. Mos's conduct. *Id.* ¶ 22. "Ms. Palestino explained she was uncomfortable working with Mr. Mos, and she asked Verifone to hold him accountable for his wrongdoing." *Id.* The human resources representative told Ms. Palestino not to return to work if she was "'uncomfortable'" and "to take time off." *Id.* ¶ 22.

Five days later, on September 24, 2025, Verifone terminated Ms. Palestino's access to its company systems. *Id.* ¶ 23. "In an email to Ms. Palestino on September 24, 2025, Verifone stated that it was preparing a severance agreement for [Ms. Palestino]." *Id.* ¶ 24. "In that email, Verifone further indicated that it would be terminating Ms. Palestino's employment whether or not she accepted the severance." *Id.* On September 26, 2025, Verifone terminated Ms. Palestino's employment. *Id.* ¶ 25.

"In addition to the report from Ms. Palestino, Verifone knew or had reason to know Mr. Mos engaged in harassing and unwelcome behavior toward other women in the workplace." *Id.* ¶ 28. "In an August 2025 meeting that included Mr. Mos and another woman sales executive, Mr. Mos repeatedly commented on her looks, saying she needed to leverage her sexual attractiveness to make sales." *Id.* "During a September 2025 business trip with the other sales executive, Mr. Mos made several sexual comments to her, then pressured her to go back to his hotel." *Id.*

Ms. Palestino brought this case on February 17, 2026. Notice of Removal [ECF No. 1] ¶ 1. The Complaint alleges two theories under the Minnesota Human Rights Act—a sexual-harassment/hostile-environment theory under Minnesota Statutes § 363A.08,

subdiv. 2, and a reprisal theory under Minnesota Statutes § 363A.15. *See* Compl. ¶¶ 29–40.

II

A Rule 12(c) motion for judgment on the pleadings is assessed under the same standard as a Rule 12(b)(6) motion. *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As with Rule 12(b)(6) motions, "courts are not strictly limited to the four corners of complaints," when deciding Rule 12(c) motions but may consider other matters, including "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[] without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (citation modified); *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526–27 (8th Cir. 2017) (explaining that consideration of matters outside the pleadings or

5

evidence in opposition to the pleadings generally converts a Rule 12(b)(6) motion into one for summary judgment).

III

A

Begin with Ms. Palestino's sexual-harassment/hostile-environment claim. The Minnesota Human Rights Act makes it an "unfair employment practice" for an employer to "discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment" because of sex. Minn. Stat. §363A.08, subdiv. 2. "Discrimination based on sex includes sexual harassment." *Kenneh v. Homeward Bound, Inc.*, 944 N.W.2d 222, 229 (Minn. 2020) (citation modified); *see* Minn. Stat. § 363A.03, subdiv. 13 (defining "discriminate")). The Minnesota Human Rights Act defines sexual harassment to include:

> unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature when: (1) submission to that conduct or communication is made a term or condition, either explicitly or implicitly, of obtaining employment . . . ; (2) submission to or rejection of that conduct or communication by an individual is used as a factor in decisions affecting that individual's employment . . . ; or (3) that conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive employment . . . environment."

Minn. Stat. §363A.03, subdiv. 43. The Act requires a sexual-harassment plaintiff to plead and ultimately establish that "(1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on membership in a protected

6

group; and (4) the harassment affected a term, condition, or privilege of her employment." *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 571 n.11 (Minn. 2008) (citing *Goins v. W. Grp.*, 635 N.W.2d 717, 725 (Minn. 2001)). Discriminatory conduct "is not actionable unless it is so severe or pervasive as to alter the conditions of the plaintiff's employment and create an abusive working environment." *Kenneh*, 944 N.W.2d at 229 (quoting *Goins*, 635 N.W.2d at 725) (citation modified).

In *Kenneh*, the Minnesota Supreme Court recognized that the Minnesota Human Rights Act "[h]istorically . . . provided more expansive protections to Minnesotans than federal law," and it clarified that courts interpreting the Act are not bound by federal decisions regarding whether harassment is sufficiently severe or pervasive enough to be actionable under federal law. *Kenneh*, 944 N.W.2d at 229 & n.2, 231 ("Our use of the severe-or-pervasive framework from federal Title VII decisions does not mean that the conclusions drawn by those courts in any particular circumstances bind Minnesota courts in the application of our state statute."); *accord Ratfield v. Delta Air Lines, Inc.*, 686 F. Supp. 3d 780, 807 (D. Minn. 2023). The court explained that "[f]or the severe-or-pervasive standard to remain useful in Minnesota, the standard must evolve to reflect changes in societal attitudes towards what is acceptable behavior in the workplace." *Kenneh*, 944 N.W.2d at 231. This is because "reasonable people would likely not tolerate the type of workplace behavior that courts previously brushed aside as an 'unsuccessful pursuit of a relationship,' or 'boorish, chauvinistic, and decidedly immature.'" *Id.* (first quoting *Geist-Miller v. Mitchell*, 783 N.W.2d 197, 203 (Minn. App. 2010); and then quoting *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 935 (8th Cir. 2002)).

Accordingly, "to determine whether [] alleged conduct had the purpose or effect of substantially interfering with employment or creating an intimidating, hostile, or offensive employment environment" under the Minnesota Human Rights Act, courts should "consider 'whether the conduct was sufficiently severe or pervasive to objectively do so and whether the plaintiff subjectively perceived her employment environment to be so altered or affected.'" *Kenneh*, 944 N.W.2d at 233 (quoting *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013)). "The severe-or-pervasive standard reflects a common-sense understanding that, to alter the conditions of employment and create an abusive working environment, sexual harassment must be more than minor: 'the work environment must be both objectively and subjectively offensive in that a reasonable person would find the environment hostile or abusive and the victim in fact perceived it to be so.'" *Id.* at 230–31 (quoting *LaMont v. Ind. Sch. Dist. No. 728*, 814 N.W.2d 14, 22 (Minn. 2012)). "Courts should not carve the work environment into a series of discrete incidents and then measure the harm occurring in each episode"; rather, "courts and juries—the fact-finders—must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 231 (citation modified). "[W]hether the alleged harassment was sufficiently severe or pervasive as to create a hostile work environment is generally a question of fact for the jury." *Id.* at 232 (first citing *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018); and then citing *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840–41 (8th Cir. 1998)).

The Complaint alleges facts plausibly showing that Ms. Palestino experienced harassment that was, viewed objectively and subjectively (from her perspective), severe and pervasive. Mr. Mos discussed Ms. Palestino's physical appearance. Compl. ¶ 18(c). He asked whether she had tattoos in sexually intimate areas. *Id.* He made several comments "implying that Ms. Palestino was hired for her sexual attractiveness instead of her job skills." *Id.* ¶ 19(b). Without Ms. Palestino's consent, he "pulled [her] close and kissed her cheek." *Id.* ¶ 19(d). "He regularly suggested" that she "should leverage her sexual attractiveness" in performing her job. *Id.* ¶ 20. It is plausible that a reasonable woman in Ms. Palestino's position would have believed, based on Mr. Mos's behavior, "that, if she was going to succeed at Verifone, [she] needed to submit to his sexually inappropriate behavior and remarks," and that is how Ms. Palestino saw things. *Id.* ¶ 4; *id.* ¶ 35. And Mr. Mos's behavior toward Ms. Palestino was consistent with how he treated another female Verifone employee. *Id.* ¶ 28. To frame this conclusion pairing the test described in *Kenneh* with the Rule 12(c) standard, all the circumstances surrounding Mr. Mos's conduct alleged in the Complaint plausibly show "boorish, chauvinistic, and decidedly immature" behavior of a sexual nature that unreasonably interfered with Ms. Palestino's work performance. 944 N.W.2d at 231 (quoting *Duncan*, 300 F.3d at 935). This, in turn, plausibly meets the severe-or-pervasive standard as the Minnesota Supreme Court described it in *Kenneh*.

Verifone argues that Ms. Palestino's "claim for harassment fails because the alleged conduct was not severe or pervasive as a matter of law." ECF No. 14 at 10. For the reasons explained in the preceding paragraph, I do not agree. Beyond that high-level contention,

Verifone advances four specific arguments. None is persuasive. *First*, Verifone argues that text messages from Mr. Mos that Ms. Palestino alleges were "inappropriate," *see* Compl. ¶¶ 15–17, cannot show harassment. ECF No. 14 at 11. My conclusion that Ms. Palestino alleges a plausible sexual-harassment claim does not consider or depend on these text messages. *Second*, Verifone argues that Mr. Mos's conduct in Atlanta occurred "over a 24-hour period" and amounted to "isolated and ambiguous comments, not actionable harassment." *Id.* at 11–12. If this assertion were faithful to the Complaint's allegations, the Minnesota Supreme Court made clear in *Kenneh* that one incident could be enough to show sexual harassment. 944 N.W.2d at 232. The assertion is not faithful to the Complaint's allegations. The Complaint alleges that Mr. Mos continued to engage in harassing behavior after the Atlanta trip. *See* Compl. ¶¶ 20, 27. *Third*, Verifone argues that the Complaint "does not identify any tangible change in job duties, pay, responsibilities, or evaluations." ECF No. 14 at 13. Verifone cites no authority interpreting the Minnesota Human Rights Act to require a sexual-harassment plaintiff to allege these harms, and the law seems clear that alleging severe or pervasive harassment alone is enough. *See Kenneh*, 944 N.W.2d at 230–32. *Fourth*, Verifone argues that the six-week delay between the Atlanta trip and Ms. Palestino's report "undercuts any inference that the alleged harassment substantially interfered with [Ms. Palestino's] employment." ECF No. 14 at 14–15. Perhaps. But accepting Verifone's preferred inference arising from this delay would not be faithful to the Rule 12(b)(6) standards governing the motion. They require me to "accept[] as true all factual allegations in the complaint and draw[] all reasonable inferences in favor of the nonmoving party." *Gorog*, 760 F.3d at 792.

B

Next consider the reprisal claim.  The Minnesota Human Rights Act's anti-reprisal provision makes it unlawful for an employer "to intentionally engage in any reprisal against any person because that person . . . opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  Minn. Stat. § 363A.15.  "A reprisal includes, but is not limited to, any form of intimidation, retaliation, or harassment."  *Id.*  A reprisal claim has three elements: "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 81 (Minn. 2010) (quoting *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 548 (Minn. 2001)).  The Complaint plausibly alleges each of these elements.  It alleges that Ms. Palestino reported the harassment.  Compl. ¶¶ 5, 21–22, 38.  It alleges that Verifone terminated her employment.  *Id.* ¶¶ 5, 22–25, 38.  And it alleges the former caused the latter.  *Id.* ¶¶ 5, 25–26, 38.

Verifone disputes these facts, but as with most Rule 12(c) motions, the fact disputes it identifies do not override the Complaint's contrary allegations.  The basis for Verifone's dispute is an email exchange between Ms. Palestino and a Verifone human resources representative dated September 24, 2025.  *See* ECF No. 4-2 at 2–3.  In the exchange, the human resources representative wrote that she had "escalated [Ms. Palestino's] request for an exit package and received confirmation that a mutual separation agreement will be offered," and that Ms. Palestino's "separation date" would be September 26.  *Id.* at 2.  The representative also wrote:

11

> Note that we do not expect you to be working during this FTO period and thus your access to Verifone systems has been revoked. We will record today, September 24 as your final "active" day, but your separation date will not be until Friday, September 26, as outlined above. You will receive regular compensation through Friday, regardless of if you choose to sign the agreement.

*Id.* Ms. Palestino replied, thanking the representative "for the update," and saying she would watch for the agreement. *Id.* In her reply, Ms. Palestino did not say anything about her anticipated termination being involuntary, and Verifone characterizes the absence of that statement as a claim-defeating admission that Ms. Palestino asked to be terminated. *See* ECF No. 14 at 5–9. Accepting this characterization as justification to grant Verifone's motion as to the reprisal claim would be a mistake. The Complaint alleges that Verifone fired Ms. Palestino. Compl. ¶¶ 5, 22–25, 38. The human resources representative's email does not establish this allegation's falsity; firings and mutual separation agreements are not mutually exclusive. And it seems at least plausible to understand the representative's email to indicate that Ms. Palestino's employment would terminate "regardless of if [she chose] to sign the agreement." ECF No. 4-2 at 2. In these circumstances, construing the email as Verifone requests would violate the fundamental rule that, in the Rule 12(c) context, a complaint's allegations, along with reasonable inferences to be drawn from those allegations, are accepted as true. *See LeMay v. Mays*, 18 F.4th 283, 288–89 (8th Cir. 2021) (refusing to accept the movant's characterizations of evidence at the motion-to-dismiss stage). For all these reasons, Verifone's motion for judgment on the pleadings will be denied.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Verifone, Inc.'s Motion for Judgment on the Pleadings [ECF No. 12] is **DENIED**.

Dated: June 29, 2026                          s/ Eric C. Tostrud
                                              Eric C. Tostrud
                                              United States District Court